UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-10052-CV-MARTINEZ
MAGISTRATE JUDGE REID

YANDRI LOPEZ MACAYA,

      Plaintiff,

v.

ARAMARK, INC., et al.,

      Defendants.

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

Plaintiff, **Yandri Lopez Macaya**, while confined at the Monroe County Detention Center, filed this *pro se* Complaint pursuant to 42 U.S.C. § 1983. [ECF No. 1]. He brings this action against food service provider Aramark, Inc. ("Aramark") and Ricardo Batalier ("Batalier"), Jean Carino ("Carino"), and Richard Iyala ("Iyala"), in both their individual and official capacities. [*Id.*]. Liberally construing Plaintiff's Complaint, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), he alleges that Defendants were deliberately indifferent to his conditions of confinement under the Fourteenth Amendment, by providing him rotten food, no food at all, or food that did not comply with his medically prescribed gluten and soy free diet. [*Id.*].

This case has been referred to the Undersigned for issuance of all preliminary orders and recommendations to the district court for dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(B). [ECF No. 5]. Because Plaintiff is proceeding *in forma pauperis* [ECF No. 6], his Complaint must be screened pursuant to 28 U.S.C. § 1915(e). *See Thompson v. Hicks*, 213 F. App'x 939, 942 (11th Cir. 2007).

1

Accordingly, as discussed below, the Undersigned **RECOMMENDS** that Plaintiff's Complaint [ECF No. 1], **PROCEED** against Defendants Aramark and Ricardo Batalier, Jean Carino, and Richard Iyala in both their individual capacities and official capacities for deliberate indifference to his conditions of confinement in violation of the Fourteenth Amendment.

## II. Standard of Review-28 U.S.C. § 1915(e)

The Prison Litigation Reform Act ("PLRA") requires the Court screen Plaintiff's Complaint under 28 U.S.C. § 1915 because Plaintiff is proceeding *in forma pauperis*. Plaintiff filed his Complaint as a civil action for deprivation of civil rights under 42 U.S.C. § 1983. To state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) (citation omitted).

Under 28 U.S.C. § 1915(e)(2)(B)(ii), Plaintiff's complaint must be dismissed if the Court determines that the complaint fails to state a claim upon which relief can be granted. *Wright v. Miranda*, 740 F. App'x 692, 694 (11th Cir. 2018). When reviewing a complaint, the Court takes the allegations made as true. *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). Additionally, a *pro se* complaint is to be liberally construed, and must be held to a less stringent standard than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The same standard is used for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and § 1915(e)(2)(B)(ii). *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Thus, the Court may dismiss a complaint that fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to "avoid dismissal for failure to state a claim, a complaint must contain factual allegations that, when accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."

*Wright*, 740 F. App'x at 694 (citing *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017))
(per curiam). Although a *pro se* pleading is liberally construed, it still must "suggest that there is
some factual support for a claim." *Id.* "Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (citing *Twombly*, 550 U.S. at 555).

### III. Plaintiff's Allegations

Plaintiff brings this cause of action against Ricardo Batalier, Jean Carino, and Richard Iyala
in both their individual and official capacities, and against food service provider Aramark. [ECF
No. 1]. Plaintiff has attached healthcare requests and responses, and grievances and responses as
exhibits to his Complaint. [ECF No. 1-1].[1]

Plaintiff entered Monroe County Detention Center on November 30, 2019, and
immediately began to experience severe allergic reactions. [ECF No. 1 at 15 ¶ 1].  On April 1,
2020, he submitted a healthcare request, stating that his allergic reactions caused rashes on his
"whole body," that he was unable to sleep due to "scratch[ing] so much," and that he was "ripping
[his] skin." [ECF No. 1-1 at 15].  He then submitted another healthcare request on April 15, 2020,
complaining that he was "swelling up in different areas of [his] body." [*Id*. at 16]. He received a
response indicating that he was seen by medical the same day. [*Id*.].

A doctor and nurse practitioner next evaluated Plaintiff on June 4, 2020. [*Id*. at 17]. Prior
to this visit, Plaintiff was receiving injections for the reactions, and the nurse indicated that she
"reviewed the menu [and] correlated it with the days [Plaintiff] needed the injection." [*Id*.]. The
Court reasonably discerns that the nurse's reference to "menu" corresponds to the type of food

---

[1] The Undersigned takes judicial notice of the attached exhibits to Plaintiff's Complaint. Fed. R. Evid. 201. *See United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987); *see also Wells v. United States*, 318 U.S. 257, 260 (1943) (suggesting that federal courts may take judicial notice of the judicial records of other federal courts).

being served, and that Plaintiff's injections correlated to reactions from the food. *See* [*id.*]. The nurse instructed Plaintiff to begin a gluten-free, soy-free diet [*Id.*]. Additionally, the nurse instructed Plaintiff to check for gluten and soy on the ingredient lists for all canteen food products and to "keep a journal still so [they could] figure out if [the diet] works." [*Id.*].

Plaintiff did not know what type of food had soy or gluten in it and he continued to get sick. [ECF No. 1 at 15 ¶ 3]. He visited the doctor and was told that the food he was eating had soy and gluten. [*Id.* ¶ 4]. Plaintiff claims that kitchen staff would "sometimes" fix his food tray, give him a regular food tray (containing gluten and soy), or leave him with no food. [*Id.*]. Plaintiff asserts that the constant "repetition of this situation" left him convinced "without a doubt that [it] was done with the intention to harm [him]" or even "to cause death through the swelling of [his] throat." [*Id.* at 16 ¶ 10].

Plaintiff frequently alerted officers to issues with his diet tray, and the officers would in turn call the kitchen staff to relay his concerns. [*Id.* at 15 ¶ 5]. Plaintiff alleges that when he overheard officers speaking on the telephone with outside kitchen workers that were responsible for "the inmate food service," the names he heard most were "Richard" and "Ricky," corresponding to Richard Iyala and Ricardo Batalier. [*Id.* ¶ 9]. Plaintiff then asked one of the captains for the names of the kitchens supervisors and he was provided with the names, Richard Iyala, Ricardo Batalier, and Jean Carino. [*Id.* at 14, 16 ¶ 9]. Plaintiff claims that as the problems with his food trays continually occurred, he started writing requests and grievances. [*Id.* ¶ 6].

On October 23, 2020, Plaintiff submitted his first grievance about his food trays to "Richard" a/k/a Richard Iyala. [ECF No. 1-1 at 3]. In the grievance, Plaintiff stated that there was rotten food on his diet tray, that rotten food was a common occurrence, and that this contributed to him being sick and swollen. [*Id.*]. A few days later, on October 25, 2020, Plaintiff filed a second

grievance to report that an officer called the kitchen to return Plaintiff's October 23, 2020 diet tray containing rotten food, but the kitchen told the officer that Plaintiff should "eat a regular tray" as a replacement. [*Id*.]. Plaintiff suffered from a swollen face and diarrhea after eating from the replacement food tray, and "spent half the night and morning get[t]ing shots." [*Id*.].

Plaintiff then submitted a third grievance on December 6, 2020, which appears to reference issues with soy in the food and Plaintiff being "swollen and taking shots;" however, the grievance is partially illegible. Plaintiff submitted a fourth grievance on December 8, 2020, and noted daily problems with his diet tray—including the service of turkey patties he believed contain soy. [*Id*. at 5]. Plaintiff wrote, "I need help. If I swell up in my sleep, I can die. Please somebody help me." [*Id*.].

In two additional grievances submitted on December 16, 2020, and December 22, 2020, Plaintiff expanded on his December 6, 2020 grievance. [*Id*. at 6-7]. Plaintiff alleged that the kitchen left him without eating because "they did not have [a] su[b]stitution for gluten and soy, and he was forced to go "hungry for seventeen hours." [*Id*. at 7]. He complained that, because of "improper food being sent or no food at all" he had been having "medical emergencies," causing his body to swell. [*Id*.]. He also claimed that on December 22, 2020, he was given "spoiled milk" and was never given a replacement. [*Id*].

Plaintiff submitted a seventh grievance on March 25, 2021, stating that he had experienced problems with his diet tray for four days in a row. [*Id*. at 8]. Plaintiff wrote: "Here I am again without food in the morning with soy on my tray, when they know that I am allergic to soy and gluten. This [has] happened so many times, leading me to believe it's been done purposefully with malicious intent, so I swell up and die. I need help[.] I don't know what to do anymore." [*Id*.].

Five days later, on March 30, 2021, Plaintiff submitted an eighth grievance, stating that he had again been provided a diet tray containing gluten and soy. [*Id*. at 9]. Plaintiff alleged that when an officer took his diet tray back to the kitchen staff, the staff said he should eat a regular tray because there were no available substitutes for gluten or soy. [*Id*.]. In total, Plaintiff submitted eight grievances related to his diet tray over a span of six months before filing this Complaint. [*Id*. at 3-11]. In April 2021, Plaintiff submitted four additional grievances requesting the names of every kitchen supervisor employed by Aramark at Monroe County Detention Facility. [*Id.* at 12-13; 20-21].

In summary, Plaintiff claims that he has suffered injuries consisting of "swelling on different areas of [his] body[,] especially in [his] throat and face." [ECF No. 1 at 17]. He also claims that he is "afraid to go to sleep, afraid to die due to the swelling on [his] throat[,]" and that he has experienced "hunger, stress, pain and suffering." [*Id*.].

He seeks "compensatory" and "punitive damages," and that the Court "[d]eclare that the acts described [in his Complaint] violated [his] rights under the Con[s]titution and laws of the United States." [*Id*. at 18]. Finally, Plaintiff also seeks any "other just and equitable relief that this honorable court deems necessary." [*Id*.]. Liberally construing this final request for relief, the Court discerns that Plaintiff may be seeking injunctive relief to ensure that he receives food in compliance with the Fourteenth Amendment, including gluten-free and soy-free diet trays to prevent the occurrence of severe allergic reactions. [*Id*.].

### IV. Legal Standard (Deliberate Indifference to Conditions of Confinement)

Claims filed by convicted prisoners under § 1983 are analyzed under the Eighth Amendment prohibition against cruel and unusual punishment, whereas § 1983 claims filed by pretrial detainees are analyzed using the Fourteenth Amendment Due Process Clause. *Bell v.*

*Wolfish*, 441 U.S. 520, 528 (1979). However, when considering the adequacy of pretrial detainees'

necessities, such as food, "the minimum standard allowed by the due process clause is the same as

that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d

1567, 1574 (11th Cir. 1985); *Carter v. DeKalb Cnty., Ga.,* 521 F. App'x 725, 729 (11th Cir. 2013).

Accordingly, although Plaintiff is a pretrial detainee and his claims fall within the purview of the

Fourteenth Amendment, his claims will be analyzed using the Eighth Amendment standard.

### Deliberate Indifference to Conditions of Confinement

In order to prevail on an Eighth Amendment claim for deliberate indifference to conditions

of confinement under § 1983, a plaintiff must establish: (1) a condition of confinement that

inflicted unnecessary pain or suffering; (2) the defendant's deliberate indifference to that

condition; and (3) causation. *LaMarca v. Turner*, 995 F. 2d 1526, 1535 (11th Cir. 1993) (citations

omitted).

With respect to the conditions of confinement element, the Constitution does not "purport

to regulate the general conditions and quality of life in the county's jails." *Hamm*, 774 F. 2d at

1573. The Constitution only requires that prisoners be provided "a well-balanced meal, containing

sufficient nutritional value to preserve health." *Id.* at 1575. Food provided to prisoners must be

"prepared and served under conditions which do not present an immediate danger to the health and

well-being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985)

(quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)). A plaintiff's complaint based on

food quality or deprivation in a prison will violate the Eighth Amendment only if the prisoner is

denied "minimal civilized measure of life's necessities." *See Wilson v. Seiter*, 501 U.S. 294, 303

(1991).

As to the second element, a plaintiff must show that the defendant acted with deliberate indifference to the challenged conditions. *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). The deliberate indifference test contains an objective and subjective prong. *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The "objective component" of the analysis requires the plaintiff to prove that the condition of confinement involved a "sufficiently serious" deprivation. *Id.* (quoting Hudson, 503 U.S. at 8 (1992). A plaintiff must show, at a minimum, that a condition of confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 34 (1993)).

Next, as to the subjective prong, Plaintiff must show that the prison official "acted with a sufficiently culpable state of mind" regarding the condition at issue. *Hudson*, 503 U.S. at 8. The Eleventh Circuit has articulated three components necessary to demonstrate deliberate indifference: (1) the official knowingly disregards a substantial risk of serious harm to the plaintiff's health or safety; (2) the official is "aware of facts from which an inference could be drawn that a substantial risk of serious harm exists"; and (3) the official "must also draw the inference." *Crosby*, 379 F.3d at 1289.

Finally, as to the third element, a plaintiff must demonstrate a causal connection between the defendant's alleged deliberate indifference and his injury. *See Harris v. Prison Health Servs.*, 706 F. App'x 945, 953 (11th Cir. 2017). Causation is typically satisfied by evidence of a connection between the constitutional violation and the injury endured. *Goebert v. Lee Cnty.*, 510 F. 3d 1312, 1327 (11th Cir. 2007).

## V. Discussion

1) <u>Defendants Iyala, Batalier, and Carino (Individual Capacity)</u>

Plaintiff brings this cause of action against Iyala, Batalier, and Carino, in their individual capacities. Plaintiff claims that he often told officers about the issues with his diet tray, and the officers would then call the kitchen staff to tell them about his concerns. [ECF No. 1 at 15 ¶ 5]. Plaintiff further alleges that when he overheard officers speaking on the telephone, he heard the names of Defendants Richard Iyala and Ricardo Batalier. [*Id*. ¶ 9]. When Plaintiff asked one of the captains for the names of the kitchen supervisors, he was given the names of Defendants Richard Iyala, Ricardo Batalier, and Jean Carino. [*Id*. at 14, 16 ¶ 9]. Based on this, as best can be discerned, Defendants were responsible for the inmate food service and the food Plaintiff was given to eat.

### A.  Legal Analysis (Deliberate Indifference to Conditions of Confinement)

As to the first element of Plaintiff's deliberate indifference claim against these Defendants, he provides sufficient facts to show that his conditions of confinement inflicted unnecessary pain and suffering. *See LaMarca*, 995 F. 2d at 1535. Plaintiff's allegations, healthcare requests, and grievances demonstrate that he experienced diarrhea, full body and throat swelling, rashes, and a general feeling of illness, from being served rotten food, no food, or food that contained gluten or soy. [ECF Nos. 1; 1-1]. Accordingly, Plaintiff has shown that the food he was served presented an immediate danger to his health and well-being. *See Shrader*, 761 F.2d at 975; *see also Crispin v. Westchester County*, 2019 WL 2419661, at *3 (S.D.N.Y. June 10, 2019) (conditions sufficiently serious where Plaintiff alleged he received raw and bloody meat on at least twenty occasions and that chili and beans made him sick and he required medical treatment).

As for the second element, Plaintiff has sufficiently pleaded that Defendants were deliberately indifferent to his conditions of confinement. Plaintiff has satisfied the objective component because his frequent consumption of rotten food or food containing gluten and soy was a "sufficiently serious" deprivation, resulting in severe allergic reactions and illness. *See e.g. Crosby*, 379 F.3d at 1289; *see also Hanner v. Westchester County*, 2019 WL 1299462, at *7 (S.D.N.Y. Mar. 21, 2019) (conditions sufficiently serious where Plaintiff alleged food did not conform to medically-prescribed diet, thus, aggravating incontinences).

Plaintiff has also satisfied the subjective component because his allegations and corroborating exhibits demonstrate that Defendants knowingly disregarded a substantial risk of harm to his health or safety. Here, as evidenced by Plaintiff's allegations, healthcare requests, and eight grievances, a plausible inference can be drawn that Defendants, as purported kitchen supervisors: (1) were aware of Plaintiff being served no food, rotten food, or food not in compliance with his medical diet; (2) were put on notice that Plaintiff was having severe allergic reactions or becoming seriously ill; and (3) did not take reasonable steps to correct Plaintiff's food that caused him to become seriously ill for a period of ten months. Accordingly, Plaintiff has shown that Defendants knew there was a history of Plaintiff receiving no food, rotten food, or food that caused him severe allergic reactions, and failed to correct such. *See Gonzalez*, 325 F.3d at 1234; *see also Nelson v. Aramark Food Serv.,* No. 18-C-614, 2018 WL 2135019, at *2–3 (E.D. Wis. May 9, 2018) (finding that plaintiff stated a claim against director defendant, who oversaw the delivery of food and was indifferent to plaintiff's complaints of mold, because defendant was responsible for overseeing policy and its implementation).

Finally, a causal connection can be drawn because Defendants' failure to correct Plaintiff being served no food, rotten food, or food that caused him to have severe allergic reactions resulted

in Plaintiff continuing to suffer serious injury. *See Harris,* 706 F. App'x at 953; *see also Nixson v. Batson,* No. 3:06CV42/RV/MD, 2006 WL 3306888, at *6 (N.D. Fla. Nov. 13, 2006) (finding that allegations in plaintiff's complaint and submitted materials sufficiently established that defendant was aware that inmates were being served spoiled food that presented an immediate danger to the health and well-being of those who consumed it, and defendant disregarded that risk).

Therefore, at this initial screening stage of litigation, the Undersigned recommends that Plaintiff's claim proceed against Defendants for deliberate indifference to his conditions of confinement. Upon further fact discovery, the Court will consider the issue of causation and whether Defendants were aware of the issues with Plaintiff's food and his ensuing injuries, and deliberately disregarded such.

2) <u>Aramark & Defendants Richard Iyala, Ricardo Batalier, and Jean Carino (Official Capacity)</u>

Plaintiff also sues Aramark and Kitchen Supervisors Iyala, Batalier, and Carino, in their official capacities.

A. *Applicable Law: Official Capacity & Suits Against Private Entity (Policy or Custom)*

Generally, under the Eighth Amendment, the State is obligated to provide certain necessities to incarcerated inmates, including, "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Although Aramark is not a governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity, state action is present" for purposes of § 1983. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted); *Gary v. Aramark Corr. Servs.,* No. 5:13-CV-417-RS-EMT, 2014 WL 3385119, at *5 (N.D. Fla. July 10, 2014). Thus, to the extent Aramark, a private corporation or entity, contractually assumed Monroe County's obligation to provide inmates safe and nutritious food, both it and its employees may be considered

11

state actors subject to liability under § 1983. *See Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997); *Coleman v. Aramark*, 31 F. App'x 808, 809 (4th Cir. 2002).

In conjunction, assuming the individual Defendants are employed by Aramark, Plaintiff's official capacity claim against the individual Defendants is the equivalent of a suit against Aramark. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) (A suit against an individual in his or her official capacity "is not a suit against the official, but rather a suit against the official's office."). Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 n.55 (1978)). Because Plaintiff's official capacity cause of action against the individual Defendants is comparable to a suit against Aramark, the Court will combine the analysis of Plaintiff's claims against Defendants in their official capacity with Plaintiff's claims against Aramark.

Under *Monell*, a plaintiff can only pursue official capacity claims and a claim against a private entity if there was an unofficial policy or custom that caused a constitutional violation. *See Walker v. City of Calhoun, Ga.*, 901 F.3d 1245, 1255 (11th Cir. 2018) (citing *Monell*, 436 U.S. at 690-91). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Demonstrating a policy or custom requires "show[ing] a persistent and wide-spread practice." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986); *Goebert v. Lee Cnty.,* 510 F.3d 1312, 1331–32 (11th Cir. 2007).

### B. *Legal Analysis (Deliberate Indifference to Conditions of Confinement)*

Here, Plaintiff has not specifically used the words "custom" or "policy" when referring to Aramark or the individual Defendants. However, in Plaintiff's Complaint he states that the problem, i.e., receiving food trays with soy and gluten or rotten food or receiving no food at all, continually happened. *See* [ECF No. 1 at 15 ¶¶ 4-5]; *see also Best v. Aramark Corr. Servs., LLC,* No. 2:14-CV-243-JMS-DKL, 2014 WL 4980553, at *3 (S.D. Ind. Oct. 6, 2014) (finding plaintiff's assertion that Aramark was not providing "nutritionally adequate food on a regular basis" was sufficient at the pleading stage to allege a "custom or usage on the part of Aramark to provide constitutionally inadequate meals").

Corroborating this recurrent series of events, Plaintiff submitted numerous grievances and healthcare requests demonstrating that he was served rotten food, food containing soy and gluten, and no food at all, on numerous occasions. *See* [ECF No. 1-1]; *see also Pagan v. Westchester Cnty.,* No. 12 CIV. 7669 PAE JCF, 2014 WL 982876, at *27 (S.D.N.Y. Mar. 12, 2014), *on reconsideration*, No. 12 CIV. 7669 PAE SN, 2015 WL 337403 (S.D.N.Y. Jan. 26, 2015) (court could not state at current stage of litigation that there was no plausible claim of an official policy or custom where plaintiff alleged that inadequately trained workers preparing food at jail frequently served undercooked food, rotten food, or inadequate portions); *Phillips v. May*, No. 16-CV-14032, 2016 WL 11716453, at *7 (S.D. Fla. Oct. 25, 2016), *report and recommendation adopted,* No. 2:16-CV-14032, 2016 WL 11716449 (S.D. Fla. Nov. 22, 2016).

Construing Plaintiff's Complaint liberally, when coupled with the exhibits attached to his Complaint, he demonstrates a series of events that occurred from which this Court could infer the existence of a custom or policy of deliberate indifference to Plaintiff's health and safety. Therefore, at this initial stage of litigation, Plaintiff's claims against Aramark and Defendants in their official

13

capacity for deliberate indifference to his health and safety may proceed for further discovery. *Balcar v. Aramark*, No. 3:17CV-P327-GNS, 2018 WL 1598933, at *2 (W.D. Ky. Apr. 2, 2018) (allowing Eighth Amendment claim to proceed against Aramark and defendant in his official capacity, where complaint alleged unsanitary conditions of food service area, serving of expired foods to prisoners, nutritionally inadequate food, maggots in food daily, and denial of a diabetic diet); *Drake v. Velasco*, 207 F. Supp. 2d 809, 814 (N.D. Ill. 2002).

It is unclear, however, from which Defendants this custom or policy purportedly stems as the Court is unable to discern, at this juncture, whether: (1) the Kitchen Supervisor Defendants are employed by Aramark and are responsible for this policy or custom; (2) Aramark itself is responsible for this policy or custom of serving food or no food at all that violates Plaintiff's constitutional rights; or (3) both Aramark and Defendants are liable for this custom or policy, collectively. Upon further fact discovery, the Court will consider these issues. *See Strope v. Sebelius,* 2006 WL 2045840 (10th Cir. July 24, 2006) (reversing district court's dismissal of Eighth Amendment deprivation of food claim for failure to state a claim, where prisoner alleged that on multiple occasions his meals were unacceptable; that a "sour'd" turkey sandwich made him sick to his stomach with severe cramps until the following morning; that the salads and oranges were routinely spoiled; and that these were examples of an "everyday and on-going" practice of the prison).

## VI. Injunctive Relief

Plaintiff also asks the Court to grant him any relief this Court deems just and proper. [ECF No. 1 at 18]. The Court will construe this request for relief to include injunctive relief, assuming arguendo, that Plaintiff is continuing to be served food that is not in compliance with his prescribed

medical diet, rotten food, or no food at all, thus presenting an immediate danger to his health and well-being.

For a preliminary injunction to issue, the party seeking relief must demonstrate the following four factors:

1. a substantial likelihood that he will prevail on the merits;

2. a substantial threat that he will suffer irreparable injury if the injunction is not granted;

3. that the threatened injury to him outweighs the potential harm the injunction may do to the defendant; and

4. that the public interest will not be impaired if the injunction is granted.

*DeYoung v. Owens*, 646 F.3d 1319, 1324 (11th Cir. 2011).

A preliminary injunction is used to preserve the status quo between the parties and to prevent irreparable injury until the merits of the lawsuit itself can be reviewed. *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *All Care Nursing Serv.*, 887 F.2d at 1537; *United States v. State of Ala.*, 791 F.2d 1450, 1457 n. 9 (11th Cir. 1986). The relief requested should be closely related to the causes of action sough in Plaintiff's complaint. *Devose*, 42 F.3d at 471; *Penn v. San Juan Hosp.*, 528 F.2d 1181, 1185 (10th Cir. 1975).

Here, assuming Plaintiff is continuing to be served food or no food which compromises his health and well-being, he would meet the first prerequisite because he has demonstrated a substantial likelihood of success on the merits. The Undersigned has recommended that Plaintiff's Complaint proceed against Aramark and Kitchen Supervisors Iyala, Batalier, Carino for further discovery to determine which Defendants, if any, are deliberately indifferent to his health and safety in violation of his constitutional rights.

Next, Plaintiff has met the second prerequisite because he has alleged, and demonstrated through his allegations and attached exhibits, that he has suffered serious medical issues as a result of being served food containing gluten or soy, rotten food, or no food at all. Accordingly, if Plaintiff is continuing to suffer serious harm from receiving no food or Defendants are continuing to serve him food causing him severe allergic reactions and illness, Plaintiff will suffer irreparable injury should an injunction not be granted. Further, the severe allergic reactions and serious illness Plaintiff would continue to suffer if an injunction is not granted would outweigh any harm that Defendants would endure by providing Plaintiff nutritionally adequate food or food in compliance with his medical diet.

Finally, for the same reasons Plaintiff satisfies the third prerequisite for injunctive relief, there will be no harm to the public interest. Defendants would suffer no harm by complying with Plaintiff's medical diet or by serving him nutritionally adequate food.

At this juncture, however, it is undetermined which Defendants are purportedly violating Plaintiff's Fourteenth Amendment rights and whether Plaintiff is continuing to be served food or no food causing him serious harm. Therefore, the Undersigned recommends deferring ruling on injunctive relief, and that once counsel enters appearance for Defendants in this case, a status conference be held to resolve these issues and determine whether injunctive relief should be granted.

## VII. Declaratory Relief

Plaintiff requests that the Court "[d]eclare that the acts described [in his Complaint] violated [his] rights under the Con[s]titution and laws of the United States. [ECF No. 1 at 18]. A federal district court is empowered to issue a declaratory judgment by the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Section 2201 provides, in pertinent part:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

That statute, echoing the "case or controversy" requirement of Article III of the Constitution, provides that a declaratory judgment may only be issued in the case of an "actual controversy." *Emory v. Peeler*, 756 F. 2d 1547, 1551-52 (11th Cir. 1985). "That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Emory*, 756 F. 2d at 1552 (citations omitted).

A finding that there is a continuation of the dispute may be reasonably inferred. *See Id*. However, that "continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate and create a definite, rather than speculative threat of future injury." *Id*. A "remote possibility" of "future injury" is not enough. *Id*.

In line with the Undersigned's reasoning for deferring ruling on injunctive relief, it would be premature to grant declaratory relief and find that Plaintiff's constitutional rights have been violated. This case is at the initial screening stage of litigation, and therefore, further discovery is needed to determine whether Defendants, if any, have violated and are continuing to violate Plaintiff's constitutional rights.

### VIII. Punitive Damages Claim

Plaintiff seeks punitive damages against all Defendants. [ECF No. 1 at 18]. Punitive damages may be awarded under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "While the *Smith* Court

determined that it was unnecessary to show actual malice to qualify for a punitive award, . . . its intent standard, at a minimum, required recklessness in its subjective form." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999). *Smith* refers to a "subjective consciousness" of a risk of injury or illegality and a "criminal indifference to civil obligations." *Id.* (quoting *Smith*, 461 U.S. at 37 n.6)). Because it cannot be determined, at this juncture, whether punitive damages should be awarded against all Defendants arising from the facts alleged, the punitive damage claim should proceed against all Defendants.

### IX. Motions to Appoint Counsel

Plaintiff has filed duplicative Motions for Appointment of Counsel. ("Motions"). [ECF Nos. 4; 7]. The law is clear that a "plaintiff in a civil case has no constitutional right to counsel." *Bass v. Perrin*, 170 F.3d 1312, 1319-20 (11th Cir. 1999). The decision to appoint counsel is within the district court's discretion, and the court should appoint counsel only in "exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992) (quoting *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987)). Where the facts and the issues are simple, he or she will usually not need help." *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993).

At this early juncture, it is not clear that Plaintiff's case consists of novel facts or complex legal issues; therefore, it is not necessary to appoint counsel. Plaintiff's Motions for Appointment of Counsel are, therefore, **DENIED** without prejudice. However, the Undersigned recommends that Plaintiff's case be placed on the volunteer attorney list.

## X. Recommendations

Although the factual basis of Plaintiff's Complaint may be undermined or disproven at a later stage, based upon the foregoing, it is **RECOMMENDED** that Plaintiff's Complaint [ECF No. 1], **PROCEED** against Defendants Aramark and Ricardo Batalier, Jean Carino, and Richard Iyala in both their individual capacities and official capacities for deliberate indifference to his conditions of confinement in violation of the Fourteenth Amendment. In recommending these claims to continue, the Court passes no judgment on the merits and ultimate outcome of the case.

It is further recommended that Plaintiff's Motions for Appointment of Counsel [ECF No. 4]; [ECF No. 7] be **DENIED WITHOUT PREJUDICE**, but that Plaintiff's case be placed on the volunteer attorney list.

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **FOURTEEN DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**SIGNED** this 27th day of July, 2021.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:      **Yandri Lopez Macaya**
         09014737
         Monroe County Jail
         Inmate/Mail Parcels
         5501 College Road
         Key West, FL 33040
         PRO SE